UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSETTE MARIE TENAS-REYNARD,

Plaintiff,

- against -

PALERMO TAXI INC., MAHBUBUR
MOLLAH, MCI TAXI INC., and JEAN
MICHEL YAPI,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3 30 16

**MEMORANDUM
OPINION & ORDER**

14 Civ. 6974 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff, a French citizen, brings this personal injury action in connection with a

car accident that occurred while she was a passenger in a taxicab in Manhattan. Defendant

Palermo Taxi, Inc., the owner of one of the automobiles involved in the collision, has filed a

Chapter 11 bankruptcy petition in the Eastern District of New York. (Dkt. No. 53) Under 11

U.S.C. § 362(a), the filing of a bankruptcy petition triggers an automatic stay of litigation against

the debtor. Defendants MCI Taxi Inc. and Jean Michel Yapi have moved for summary judgment

on Plaintiff's claims against them. (Dkt. No. 48[1]) Plaintiff has moved to amend the Complaint to

add a new cause of action against a new defendant. (Dkt. No. 59) This order addresses the

scope of the Section 362 stay and resolves the pending motions.

---

[1] Defendants filed their motion for summary judgment twice in the Electronic Case Filing (ECF)
system. (Dkt. Nos. 48, 71) The motions and supporting papers for Docket Numbers 48 and 71
are identical.

## BACKGROUND

### I.   FACTS[2]

Plaintiff Josette Marie Tenas-Reynard – a resident of Paris, France – brings this

action against Palermo Taxi, Inc. ("Palermo"), Mahbubur Mollah (collectively, the "Palermo

Defendants"), MCI Taxi Inc. , and Jean Michel Yapi (collectively, the "MCI Defendants"),

pursuant to this Court's diversity jurisdiction. (Cmplt. (Dkt. No. 1) at ¶¶ 1-5; Bornes Decl. Ex.

E, Pltf. Dep. (Dkt. No. 50-5) at 9)  On December 3, 2011, Plaintiff was a passenger in a taxicab

owned by Palermo and operated by Mollah.  (Pltf.'s Response to MCI Defendants' R. 56.1 Stmt.

(Dkt. No. 80) ("Pltf. 56.1 Resp.") at ¶ 8; see also Bornes Decl., Ex. E, Pltf. Dep. (Dkt. No. 50-5)

at 14:16-22[3]; id., Ex. D, Mollah Dep. (Dkt. No. 50-4) at 17:10-23)  Yapi was driving a taxicab

owned by MCI that day.[4]  (See Pltf. 56.1 Resp. (Dkt. No. 80) at ¶ 7; Bornes Decl., Ex. C, Yapi

Dep. (Dkt. No. 50-3) at 29:6-18)

While driving on Fifth Avenue in the vicinity of 34th Street in Manhattan, Yapi

heard an ambulance siren.  (See Pltf. 56.1 Resp. (Dkt. No. 80) at ¶ 4; Bornes Decl., Ex. C, Yapi

Dep. (Dkt. No. 50-3) at 37:24-38:23)  Yapi then stopped his vehicle: "[w]hen I heard a siren, I

---

[2] To the extent that this Court relies on facts drawn from the MCI Defendants' Local Rule 56.1
Statement, it has done so because Plaintiff has either not disputed those facts or has not done so
with citations to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140
(2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving
party's Rule 56.1 statement, that fact will be deemed admitted.") (citations omitted).  Where
Plaintiff disagrees with the MCI Defendants' characterization of the cited evidence, and has
presented an evidentiary basis for doing so, the Court relies on Plaintiff's characterization of the
evidence.  Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational
factual inferences in non-movant's favor in deciding summary judgment motion).  Additionally,
where relevant facts were not provided in the Local Rule 56.1 statements, this Court has
considered the evidence in the light most favorable to Plaintiff.
[3] The page numbers referenced in this Order correspond to the page numbers designated by the
Electronic Case Filing system.
[4] Although MCI's ownership of Yapi's vehicle is not addressed in the Local Rule 56.1
statements, the parties do not dispute that MCI owns this vehicle.

was looking for where it was coming from, and I saw the car in the left lane stop. The first car, the first lane, the car stopped. The second lane, the car stopped. . . . When I stopped, the accident happened." (Id. at 38:16-23)

The cab driven by Mollah collided with the rear of Yapi's stopped cab. (See Pltf. 56.1 Resp. (Dkt. No. 80) at ¶¶ 7-8; Bornes Decl., Ex. D, Mollah Dep. (Dkt. No. 50-4) at 20)  At his deposition, Mollah testified that he heard a siren before the collision, and that "all the cars around there" had stopped "when they heard the ambulance." (Bornes Decl., Ex. D, Mollah Dep. (Dkt. No. 50-4) at 21:14-21:12)

Yapi testified that he applied a "[a] very soft brake" to stop his car after he observed cars in the first and second lanes stop to allow the ambulance to pass. (See MCI Def. R. 56.1 Stmt. (Dkt. No. 49) at ¶ 3; Bornes Decl., Ex. C, Yapi Dep. (Dkt. No. 50-3) at 45:14-18) Yapi estimates that it took 10 to 15 seconds for his cab to come to a halt after he first began applying the brake. (Id. at 45:14-18)  Mollah testified, however, that Yapi "stop[ped] short," and that Mollah's vehicle collided with Yapi's vehicle because when Mollah  "pressed the brake . . . it did not work." (Bornes Decl., Ex. D, Mollah Dep. (Dkt. No. 50-4) at 21:15-19; see also MCI Def. R. 56.1 Stmt. (Dkt. No. 49) at ¶ 15)

Plaintiff testified that she was unconscious from the moment of impact until she woke up in a hospital the next day.  She has no memory of the circumstances of the collision. (Pltf. Reply 56.1 Stmt. (Dkt. No. 68) at ¶ 10; see also Bornes Decl., Ex. E, Pltf. Dep. (Dkt. No. 50-5) at 21:24-22:2)

## II.   PROCEDURAL HISTORY

Plaintiff filed this action on August 27, 2014. (Cmplt. (Dkt. No. 1)  The Complaint alleges that Mollah and Yapi are liable for negligently operating a moving vehicle

occupied by a passenger in violation of New York City Taxi and Limousine Commission Rule 54-13(a)(2) and New York Vehicle and Traffic Law § 1129(a), (Cmplt. (Dkt. No. 1) at ¶¶ 23, 28), and that Palermo and MCI are liable under New York Vehicle and Traffic Law § 388 and New York City Administrative Code § 19-530 as the owners of the vehicles and taxicab medallions. (Id. at ¶¶ 24-25, 29-30)

On September 15, 2014, MCI and Yapi filed their Answer, in which they assert a cross-claim against defendants Palermo and Mollah. (Dkt. No. 4)  On October 3, 2014, Palermo and Mollah their Answer, which asserts a cross-claim against MCI and Yapi. (Dkt. No. 5)

MCI and Yapi have moved for summary judgment on Plaintiff's claims against them, arguing that Yapi was not negligent as a matter of law. (Dkt. Nos. 48)  Plaintiff opposes the motion. (Dkt. Nos. 78)

Plaintiff has also moved to amend the Complaint to add a claim for vicarious liability against Woodside Management Inc., which leased Palermo's vehicle to Mollah. (Dkt. No. 59)  Plaintiff claims that Mollah is an employee of Woodside and that Woodside is therefore liable for Mollah's negligence. (Pltf's Mtn. to Am. Br. (Dkt. No. 61) at 2, 4-5)  All Defendants oppose this motion. (Dkt. Nos. 63, 65)

## III.   PALERMO'S BANKRUPTCY PETITION

On July 22, 2015, Palermo filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of New York. (See Dkt. No. 53)  Palermo's petition was consolidated with more than twenty other petitions filed by related entities. (Stadtmauer Decl. (Dkt. No. 83) at ¶ 10)  That matter is pending in the Eastern District as In re: HYPNOTIC TAXI LLC, et. al., Debtors, Case No. 15-43300 (CEC). (Id. at ¶¶ 10-11)  None of the Defendants brought Palermo's bankruptcy petition to this Court's attention.

In a July 31, 2015 letter, Plaintiff requested that this Court issue an order confirming that the Bankruptcy Code's automatic stay applies only to defendant Palermo and not to any other defendant. (Dkt. No. 54)  In an August 17, 2015 letter, Defendants Mollah and Palermo argue that the automatic stay applies to all Defendants. (Dkt. No. 55)  In an August 17, 2015 letter, Plaintiff reiterates that the automatic stay applies only to claims against Palermo. (Dkt. No. 56)

On March 4, 2016, Plaintiff filed a motion seeking an order "staying this action as to defendant Palermo only" and granting her permission to "supplement her application to amend the complaint to include [] additional evidence adduced in the bankruptcy case."[5]  (Stadtmauer Decl. (Dkt. No. 83) at ¶ 1)  On March 9, 2016, Defendants MCI and Yapi filed an affirmation in opposition to Plaintiff's motion. (Dkt. No. 85)  The MCI Defendants state that they "take no position with regard to the stay as against Palermo," but otherwise do not address the scope of the automatic stay in any fashion.  (Id. at ¶ 2)  On March 15, 2016, Defendants Palermo and Mollah filed an opposition to Plaintiff's motion. (Dkt. No. 86)  The Palermo Defendants' opposition addresses only Plaintiff's motion to amend, however, and says nothing about the scope of the automatic stay.

## DISCUSSION

## I.    SCOPE OF THE BANKRUPTCY CODE'S AUTOMATIC STAY

### A.    Applicable Law

A Chapter 11 bankruptcy petition "operates as a stay, applicable to all entities, of[] . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the

---

[5] Defendants have not opposed Plaintiff's application to supplement her motion to amend papers. (See Dkt. Nos. 85, 86)  Accordingly, Plaintiff's request is granted and this Court will consider the additional materials in ruling on Plaintiff's motion to amend.

5

commencement of the case. . . ." 11 U.S.C. § 362(a). The stay "is meant to give 'the debtor a

breathing spell from [its] creditors [and] . . . permit [] the debtor to attempt a repayment or

reorganization plan, or simply to be relieved of the financial pressures that drove [it] into

bankruptcy.'" Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc., 945 F.

Supp. 603, 606 (S.D.N.Y. 1996) (quoting S. Rep. No. 95-989, at 54-55 (1978), reprinted in U.S.

Code Cong. & Admin. News 1978, 5787, 5840-41). "In addition, the automatic stay allows the

bankruptcy court to centralize all disputes concerning property of the debtor's estate in the

bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated

proceedings in other arenas." In re Ionosphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir. 1990).

        The automatic stay does not, however, prevent a case from proceeding against

non-bankrupt co-defendants absent unusual circumstances. "It is well-established that stays

pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."

Teachers Ins. And Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 65 (2d Cir. 1986) (citing Fortier

v. Dona Anna Plaza Partners, 747 F.2d 1324, 1329-30 (10th Cir. 1984); Williford v. Armstrong

World Indus., Inc., 715 F. 2d 124, 126-27 (4th Cir. 1983); Lynch v. Johns-Manville Sales Corp.,

710 F.2d 1194, 1196-97 (6th Cir. 1983); Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 544

(5th Cir. 1983); Austin v. Unarco Indus., Inc., 705 F.2d 1, 4-5 (1st Cir. 1983); Pitts v. Unarco

Indus., Inc., 698 F.2d 313, 314 (7th Cir. 1983) (per curiam)). "Chapter 11, unlike Chapter 13,

contains no provision to protect non-debtors who are jointly liable on a debt with the debtor." Id.

at 65. This limitation prevents "vast and unwarranted interference with creditors' enforcement of

their rights against non-debtor co-defendants." Queenie Ltd v. Nygard Int'l, 321 F.3d 282, 288

(2d Cir. 2003).

        There are, however,

6

> limited and unusual exceptions to th[e] rule[ that claims against non-debtor co-defendants fall outside the scope of an automatic stay]. . . . For example, a stay may be extended to a non-bankrupt co-defendant if there are "unusual circumstances" in that the debtor and the co-defendant are so closely related that the "debtor may be said to be the real party defendant" and that a judgment against the nondebtor co-defendant "will in effect be a judgment or finding against the debtor."

Mercier v. GMAC Mortg. LLC, No 3:11-CV-1379 (CSH), 2012 WL 1856443, at *1 (D. Conn. May 21, 2012) (quoting Matter of S.I. Acquisition, Inc., 817 F.2d 1142, 1147-48 (5th Cir. 1987); citing In re Metal Center, 31 B.R. 458, 462 (D. Conn. 1983)). The Second Circuit has clarified that the automatic stay "normally [applies to non-debtors] only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." Queenie Ltd., 321 F.3d at 287. For example, where a non-debtor co-defendant is "wholly owned" by the debtor, id. at 288, or is "entitled to absolute indemnity by the debtor on account of any judgment that might result against them in this case," A. H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986), a stay may be extended to that co-defendant. Extending the stay to non-debtor co-defendants in these circumstances furthers the Congressional intent to give debtors a respite from litigation by not "permitting indirectly what is expressly prohibited in the Code." In re Metal Center, 31 B.R. at 462. [6]

---

[6] Courts disagree as to whether the authority to grant a stay to a non-debtor co-defendant is derived from Section 362 or arises separately under a court's general discretionary authority under 11 U.S.C. § 105. Compare Butler, 803 F.2d at 65 (because a Section 362 stay does not apply to co-defendants, court's analysis is "limited to the question of whether[,] pursuant to its general equity powers under 11 U.S.C. § 105, the bankruptcy court properly extended the automatic stay to the non-bankrupt general partners") and In re Matter of Johns-Manville Corp., 26 B.R. 405, 408-09 (Bankr. S.D.N.Y. 1983) ("The issue[] presented [is] . . . whether this Court should take the [] step of exercising its discretion pursuant to Section 105 of the Code to extend the Section 362 automatic stay so as to encompass the co-defendants herein[.]") with Queenie, Ltd., 321 F.3d at 288 (finding that a stay against a non-debtor co-defendant was appropriate under both Section 362(a) and Section 105) and Chord Assocs. LLC v. Protech 2003-D, LLC, No. 07-5138 (JFB)(AKT), 2010 WL 1257874, at *5-13 (E.D.N.Y. Mar. 25, 2010) (determining

That a debtor may be "jointly liable" with a co-defendant is generally not sufficient to justify a stay of proceedings against the co-defendant. Butler, 803 F.2d at 65. "[I]n situations where a codefendant is independently liable [–] as, for example, where the debtor and another are joint tort[]feasors or where the non[-]debtor's liability rests upon his own breach of duty[] [–] then the protection afforded a debtor under the automatic stay would clearly not extend to such non[-]debtor." In re Metal Center, 31 B.R. at 462. Where a ruling against a non-debtor would impact the debtor only through the "precedential effect" of the claim's resolution – such as the possibility that collateral estoppel might apply in a later proceeding against the debtor – there is not a sufficient "immediate adverse economic consequence" to justify extending the stay to co-defendants. Queenie, Ltd., 321 F.3d at 288. Where "a debtor and a non[-]debtor are so bound by statute or contract that the liability of the non[-]debtor is imputed to the debtor by operation of law," however, a stay of the claim against the non-debtor may be appropriate. In re Metal Center, Inc., 31 B.R. at 462.

## B.   Analysis

There is no dispute that the claims against Palermo fall within the automatic stay. The question that remains is whether the automatic stay applies to claims against Palermo's co-defendants in this action.

> "All proceedings in a single case are not lumped together for purposes of automatic stay analysis. Even if the first claim filed in a case was originally brought against the debtor, section 362 does not necessarily stay all other claims in the case. Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay."

whether non-debtor defendants were entitled to an automatic stay under Section 362 and separately addressing whether a discretionary stay was appropriate).

Chord Assocs. LLC v. Protech 2003-D, LLC, No. 007-5138 (JFB)(AKT), 2010 WL 1257874, at

*11 (E.D.N.Y. Mar. 25, 2010) (quoting Maritime Elec. Co. Inc. v. United Jersey Bank, 959 F.2d

1194, 1204-05 (3d Cir. 1992)).

## 1.    Claims Against Defendant Mollah

Palermo's potential liability is not based on an independent breach of duty;

instead, Mollah's negligence is imputed to Palermo by New York statute. Plaintiff's claims

against Palermo are brought pursuant to New York Vehicle and Traffic Law § 388 and New

York City Administrative Code § 19-530. (Cmplt. (Dkt. No. 1) at ¶¶ 24-25)  Section 388

imposes liability to Palermo as the owner of the vehicle:

> [e]very owner of a vehicle used or operated in this state shall be liable and
> responsible for . . . injuries to person or property resulting from negligence in the
> use or operation of such vehicle, in the business of such owner or otherwise, by
> any person using or operating with the same permission, express or implied, of
> such owner.

Veh. & Traf. Law § 388.  Because Section 388 imputes liability to Palermo, it is not necessary

for this Court to determine whether liability would also be imputed to Palermo under Section 19-

530.[7]  In short, as the owner of the vehicle, Palermo is automatically liable for

---

[7] Section 19-530 has likewise been interpreted as imputing liability to owners of taxicab
medallions, see Karlin v. H&L Maintenance, No. 97 CV 2551, 1997 WL 720769, at *2-3
(E.D.N.Y. Oct. 1, 1997), but neither the New York Court of Appeals nor the Second Circuit has
spoken on this issue.  The Second Circuit certified the question of whether Section 19-530
imputes liability to medallion owners, see Golden v. Winjohn Taxi Corp., 311 F.3d 513, 524 (2d
Cir. 2002), but the parties settled before the New York Court of Appeals issued a decision, and
the Second Circuit withdrew the question.  Golden v. Winjohn Taxi Corp., 323 F.3d 185, 186-87
(2d Cir. 2003) (per curiam).

As the Second Circuit noted in Golden,

> the question of whether § 19-530(l) extends vicarious liability to a medallion
> owner for the negligence of a driver would tend to arise only in the factual context
> . . . in which the medallion owner does not own the taxicab involved in the
> accident[, ]because in instances in which the medallion owner owns the taxicab,

9

Mollah's negligence. Accordingly, "a judgment against [Mollah] 'will in effect be a judgment or finding against [Palermo].'" Mercier, 2012 WL 1856443, at *1 (quoting Matter of S.I. Acquisition, Inc., 817 F.2d at 1147).

Plaintiff argues that Mollah may be able to pay any judgment rendered against him, and therefore the judgment would not necessarily have the requisite immediate adverse economic consequence on Palermo. (See Aug. 17, 2015 Pltf. Ltr. (Dkt. No. 56) at 1)  Once Mollah's negligence is established, however, there are no additional proceedings that would be necessary to establish Palermo's liability. Indeed, Palermo's liability is automatic and co-extensive with Mollah's liability. In cases where courts have declined to extend a stay to such a closely related non-debtor co-defendant, liability has not been automatic and co-extensive. See Variable-Parameter Fixture Dev. Corp., 945 F. Supp. at 608-09 (declining to stay claims against non-bankrupt sole shareholder of debtor corporation where liability of the former depended on whether it was the "alter ego" of the latter); CAE Indus. Ltd. v. Aerospace Holdings Co., 116 B.R. 31, 33-34 (S.D.N.Y. 1990) (declining to extend stay to non-debtor corporate officer where indemnity agreement was not "absolute[]" and permitted indemnification only "after review and determination by independent parties").

Because it is undisputed that Palermo owns the vehicle that Mollah was driving, Palermo will be automatically liable under Section 388 for any injuries that resulted from Mollah's negligence. Under these circumstances, the automatic stay extends to claims against Mollah, because "a claim against [Mollah] will, when entered, constitute a claim (and hence, an

---

the medallion owner would already be vicariously liable for a passenger's injuries under Veh. & Traf. Law § 388. In this latter type of case, there would presumably be no need to resort to § 19-530(l) for a finding of vicarious liability.

Golden, 311 F.3d at 520 n.8.

'immediate adverse economic consequence') against [Palermo's] estate." Robert Plan Corp. v.
Liberty Mut. Ins. Co., No. 09-CV-1930 (JS), 2010 WL 1193151 (E.D.N.Y. Mar. 23, 2010) (stay
extended to officers of debtor corporation, "because the Debtors have already pledged to
indemnify the Officers"); see also Queenie, Ltd., 321 F.3d at 288 (applying the automatic stay to
a non-debtor co-defendant where the co-defendant was wholly owned by the debtor); Ng v.
Adler, 518 B.R. 228, 246-49 (Bankr. E.D.N.Y. 2014) (extending stay to debtor's five corporate
alter egos); In re Ladieu, Bankr. No. 07-10868, 2011 WL 748566, at *19 (Bankr. D. Vt. Feb. 24,
2011) (applying stay to a non-debtor co-defendant where the debtor was a guarantor of the co-
defendant and the debtor was the sole member of the co-defendant LLC).

### 2.    Stay as to Defendants Yapi and MCI

#### (a)    Plaintiff's Claims Against Yapi and MCI

Unlike the claims against Mollah, the resolution of Plaintiff's claims against Yapi
and MCI will have no binding effect on Plaintiff's claims against Palermo (or Palermo's cross-
claims against MCI and Yapi).  Under New York law, a finding of liability or non-liability as to
one party in a negligence action does not generally absolve any unrelated party of liability.  See
Tutrani v. Cnty. of Suffolk, 10 N.Y.3d 906, 908 (2008) (negligence of one driver in a rear-end
collision "does not absolve [another driver] as a matter of law"); Alexander v. City of New York,
21 A.D.3d 389, 390 (2d Dept. 2005) (acknowledging the "oft-stated rule that there may be more
than one proximate cause of a plaintiff's injuries").  Moreover, a finding that a party is not liable
in a negligence action generally does not automatically lead to the imposition of liability on
another, unrelated party.

Even if a finding that Yapi and MCI were not negligent could somehow prove
detrimental to Palermo later, the Second Circuit has rejected the argument that an automatic stay

11

applies to claims against a non-debtor "solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision." Queenie, Ltd., 321 F.3d at 288; see also Thomson Kernaghan & Co. v. Global Intellicom, Inc., Nos. 99 Civ. 3005(DLC), 99 Civ. 3015(DLC), 2000 WL 640653, at *15 (S.D.N.Y. May 17, 2000) (claim that the outcome of actions against officer of debtor corporation "may be potentially detrimental" to the debtor estate due to the possibility that the officer would make a claim for indemnification was "insufficient" to justify a stay of the claims against the non-debtor officer). The impact that a ruling on Plaintiff's claims against MCI and Yapi might have on Palermo is not sufficiently "immediate" or "adverse" to justify extending the stay to claims against MCI and Yapi.

### (b)    The Palermo Defendants' Cross-Claims Against Yapi and MCI

"[T]he automatic stay provision of Section 362 "'by its terms only stays proceedings against the debtor," and "does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.""" In re Fin. News Network Inc., 158 B.R. 570, 572 (S.D.N.Y. 1993) (quoting Carley Capital Grp. v. Fireman's Fund Ins. Co., 889 F.2d 1126, 1127 (D.C. Cir. 1989) (per curiam) (quoting Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982))) (emphasis in St. Croix). Accordingly, "within one case, actions against a debtor will be suspended even though closely related claims asserted by the debtor may continue." Maritime Elec. Co., Inc., 959 F.2d at 1205 (emphasis in original). Although this may result in closely related claims being treated differently,

[t]he purpose behind [S]ection 362 indicates that the distinction between "offensive" and "defensive" actions of a party which affect the debtor's estate is an appropriate one to draw in determining the applicability of an automatic stay. The principal policy behind the automatic stay of [S]ection 362 is "to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of

12

property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors."

In re Fin. News Network Inc., 158 B.R. at 573 (quoting Martin-Trigona v. Champion Fed. Savings and Loan Ass'n, 892 F.2d 575, 577 (7th Cir. 1989)).

Because debtors that enjoy an automatic stay may pursue claims against other parties, the stay also "does not prevent entities against whom the debtor proceeds in an offensive posture – for example, by initiating a judicial or adversarial proceeding – from 'protecting their legal rights.'" Id. (quoting Martin-Trigona, 892 F.2d at 577); see also In re Teligent, Inc., 459 B.R. 190, 198 n.8 (Bankr. S.D.N.Y. 2011) ("A non-party does not violate the automatic stay by defending a lawsuit brought against it." (citing In re Fin. News Network, Inc., 158 B.R. at 573)). This principle applies with equal force to cross-claims brought by a debtor. See Vitranschart, Inc. v. Levy, No. 00Civ.3618(SHS), 2000 WL 1239081, at *5 (S.D.N.Y. Aug. 31, 2000) (automatic stay does not apply to "third-party complaint, cross-claims, or counterclaims" brought by a debtor (citing Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 516 (2d Cir. 1998) (per curiam); Koolik v. Markowitz, 40 F.3d 567, 568 (2d Cir. 1994) (per curiam); Berry Estates, Inc. v. State of New York (In re Berry Estates, Inc.), 812 F.2d 67, 71 (2d Cir. 1987))).

Accordingly, although Yapi and MCI's cross-claims against Palermo and Mollah are subject to the stay, Palermo and Mollah's cross-claims against Yapi and MCI are not.

*      *      *      *

For the reasons stated above, all claims against Defendants Palermo and Mollah – whether brought by Plaintiff or co-defendants – are stayed. All claims against defendants MCI and Yapi may proceed.

13

## II.   MCI DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS

### A.   Summary Judgment Standard

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Services, Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citing Dister v. Continental Group, Inc. 859 F.2d 1108, 1114 (2d Cir. 1988)). "'[T]hat opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment,' in that contradictory testimony only establishes a 'genuine' issue for trial if it 'lead[s] to a different legal outcome.'" Yi Fu Chen v. Spring Tailor, L.L.C., No. 14 Civ. 218(PAE), 2015 WL 3953532, at *4 (S.D.N.Y. June 29, 2015) (quoting Krynski v. Chase, 707 F. Supp. 2d 334, 322 (E.D.N.Y. 2009)).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks and citation omitted)). However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where

14

none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

## B.    Applicable Law

"[B]ecause a federal court sitting in diversity applies the law of the forum state and because New York is the state where the tort occurred[,]" New York law governs Plaintiff's negligence claim. Velez v. Sebco Laundry Systems, Inc. 178 F. Supp. 2d 336, 339 (S.D.N.Y. 2001) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 80 (1938); Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996)); see also Yi Fu Chen, 2015 WL 3953532, at *1 n.3 (applying New York law in a diversity action alleging negligence arising out of a rear-end collision that took place in New York).

"'Under New York law, . . . a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P., 737 F.3d 166, 177 (2d. Cir. 2013) (quoting Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000)).

Causation under New York law,

"incorporates at least two separate but related concepts: cause-in-fact and proximate cause. Cause-in-fact refers to those antecedent events, acts or omissions which have so far contributed to the result that without them it would not have occurred. . . . Proximate cause serves to limit, for legal and police reason, the responsibility of an actor for the consequences of his conduct."

Id. at 178 (quoting Monahan v. Weichert, 82 A.D.2d 102, 106 (4th Dept. 1981)). "Generally, an act proximately causes a certain event when the act is a 'substantial cause' of the event . . . or where the event is a 'normal or foreseeable consequence' of the act[.]" Allison v. Rite Aid Corp., 812 F. Supp. 2d 565, 568-69 (S.D.N.Y. 2011) (citing Derdiarian v. Felix Contracting

Corp., 51 N.Y.2d 308, 315 (1980); Tutrani, 10 N.Y.3d at 908); see also Di Ponzio v. Riordan, 89

N.Y.2d 578, 584 (1997) ("[C]onduct is considered negligent when it tends to subject another to

an unreasonable risk of harm arising from one or more particular foreseeable hazards."

(emphasis in original) (citing Restatement (Second) of Torts § 281 at 6)). While "[t]he trend in

New York cases is to focus analysis more on 'substantial factor' or proximate cause analysis and

less on cause-in-fact analysis[,] . . . it remains 'the general rule that in common-law negligence

actions[] a plaintiff must prove that the defendant's conduct was a cause-in-fact of the injury.'"

Aegis Ins. Services, Inc., 737 F.3d at 178 (quoting Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d

222, 241 (2001)).

### C.   Analysis

#### 1.   Prima Facie Case of Negligence Against Mollah

New York law imposes a duty on "[t]he driver of an automobile . . . to maintain a

safe distance between his or her own vehicle and the vehicle in front of him or her[.]" Cheow v.

Jin, 121 A.D.3d 1058, 1058 (2d Dept. 2014) (citations omitted). Pursuant to this duty, "a 'rear-

end collision with a stopped vehicle establishes a prima facie case of negligence on the part of

the driver of the rear vehicle[.]'" Tutrani, 10 N.Y.3d at 908 (quoting Stalikas v. United

Materials, 306 A.D.2d 810, 810 (4th Dept. 2003) (internal quotation marks and citation omitted),

aff'd 100 N.Y.2d 626, 627-28 (2003)). The "'operator of the moving vehicle [then must] come

forward with an adequate non[-]negligent explanation for the accident.'" Santos v. Booth, 126

A.D.3d 506, 506 (1st Dept. 2015) (quoting Cabrera v. Rodriguez, 72 A.D.3d 553, 553 (1st Dept.

2010)).

The MCI Defendants argue that they are entitled to summary judgment on

Plaintiff's claims against them because Plaintiff has not rebutted the prima facie case of Mollah's

16

negligence. (MCI Def. Br. (Dkt. No. 51) at 4-5)  Many New York courts have granted summary judgment in such circumstances. See, e.g., Billis v. Tunjian, 120 A.D.3d 1168, 1169-70 (2d Dept. 2014) (granting summary judgment dismissing the complaint as to defendants whose car was rear-ended; "plaintiff's assertion that [defendant's] vehicle stopped short was insufficient to defeat . . . defendants' summary judgment motion"); Le Grand v. Silberstein, 123 A.D.3d 773, 775 (2d Dept. 2014) (summary judgment granted to defendant on plaintiff's claims and co-defendant's crossclaims; defendant "established his prima facie entitlement to judgment as a matter of law by proffering his own affidavit, which demonstrated that his vehicle was slowing down for traffic in front of it when it was struck in the rear [by the co-defendant's vehicle]"; co-defendant's "averments that his vehicle was 'positioned behind a line of traffic,' and that [defendant's] vehicle came to a sudden stop while in heavy traffic, were insufficient to raise a triable issue of fact as to whether there was a non[-]negligent explanation for the rear-end collision"); Williams v. Hamilton, 116 A.D.3d 421, 422 (1st Dept. 2014) ("Defendant Romero established entitlement to judgment as a matter of law in this action where plaintiff was injured when her car was struck from behind by a vehicle driven by defendant Hamilton, causing her car to strike Romero's car.  Romero submitted evidence showing that his car was stationary at the time of the accident. . . . In opposition, plaintiff failed to raise a triable issue of fact.  Plaintiff's testimony that Romero stopped abruptly and failed to use his turn signal properly at an intersection prior to the collision fails to raise a triable issue."); Dattilo v. Best Transp. Inc., 79 A.D.3d 432, 433 (1st Dept. 2010) (granting defendants' summary judgment motion where they "sustained their burden of presenting prima facie evidence that the decedent's negligence was the proximate cause of the accident because he failed to maintain a safe distance between his motorcycle and the rear of the [defendants'] car").

17

Establishing a prima facie case of negligence against the driver of a rear vehicle does not absolve all other parties to an accident of potential liability, however. In Tutrani, 10 N.Y.3d at 908, plaintiff claimed that defendant Weidl had "abruptly decelerated from approximately 40 miles per hour to 1 or 2 miles per hour while changing lanes[,]" prompting the plaintiff to "slam[] on her brakes" and causing a third vehicle, driven by a co-defendant, to rear-end plaintiff. Id. at 907. The Appellate Division reversed a jury verdict against Weidl, finding that Weidl had not caused the accident as a matter of law, because plaintiff had been able to come to a stop without hitting his vehicle. Id. The Court of Appeals reversed, explaining that the co-defendant's "negligence in rear-ending plaintiff's stopped vehicle does not absolve Officer Weidl of liability as a matter of law." Id. at 908. Weidl's "actions created a foreseeable danger that vehicles would have to brake aggressively in an effort to avoid the lane obstruction created by his vehicle, thereby increasing the risk of rear-end collisions[.]" Id. Accordingly, "the jury could have rationally found, as it did here, that [Weidl's] conduct '"set into motion an eminently foreseeable chain of events that resulted in [the] collision'" between the vehicles driven by plaintiff and [the rear car defendant.]" Id. at 907 (quoting Sheffer v. Critoph, 13 A.D.3d 1185, 1187 (4th Dept. 2004) (quoting Murtagh v. Beachy, 6 A.D.3d 786, 788 (3d Dept. 2004)).

Nothing in the two-page Tutrani decision suggests, however, that it was intended to overturn well-settled law that (1) a "rear-end collision with a stopped vehicle establishes a prima facie case of negligence on the part of the driver of the rear vehicle," id. at 908; and (2) that an assertion that the front driver stopped short is not sufficient to raise a triable issue of fact. The Tutrani court held that Officer Weidl should not be absolved of liability where his "reckless" actions – in obstructing the lane in which he was traveling – forced plaintiff to abruptly slam on

18

her brakes, causing a third driver to plow into plaintiff. Id. at 907. But the vast majority of New York's lower courts have not read Tutrani as announcing that in a two-car accident such as that here, where a stopped vehicle is rear-ended, the prima facie case of negligence can be rebutted simply by the rear driver alleging that the front driver stopped short. To the contrary, countless courts have – post-Tutrani – continued to grant summary judgment in such circumstances.[8]

Because Plaintiff has not rebutted the MCI Defendants' prima facie case that Mollah acted negligently, the MCI Defendants are entitled to summary judgment on Plaintiff's claims.

---

[8] See, e.g., Cortese v. Pobejimov, 136 A.D.3d 635, 635 (2d Dept. 2016) (granting summary judgment for defendants, who had been rear-ended, because prima facie case of negligence on the part of co-defendant, the driver of the rear vehicle, was not rebutted); Padilla v. Zulu Services, 132 A.D.3d 522, 522 (1st Dept. 2015) (granting summary judgment for defendant whose stopped vehicle was rear-ended because plaintiffs failed to rebut the presumption of negligence); Paterson v. Sikorski, 118 A.D.3d 1330, 1331 (4th Dept. 2014) (granting defendant's summary judgment motion where defendant stopped his vehicle, the vehicle behind defendant stopped, and the third vehicle collided with the second; explaining that the rule in Tutrani is limited to "extraordinary factors not present here"); Billis, 120 A.D.3d at 1169-70 (granting summary judgment to defendant, the driver of a car that was rear-ended, where plaintiff alleged that defendant's vehicle stopped short); Brothers v. Bartling, 130 A.D.3d 554, 555-56 (2d Dept. 2015) (granting summary judgment for defendants, driver and owners of a rear-ended vehicle, because co-defendants failed to raise a triable issue of fact to rebut the prima facie case of negligence on the part of the rear vehicle's driver); Williams, 116 A.D.3d at 422 (granting summary judgment in favor of defendant, the driver of a rear-ended vehicle, where plaintiff alleged that he had "stopped abruptly and failed to use his turn signal properly"); Schmidt v. Guenther, 103 A.D.3d 1162, 1162-63 (4th Dept. 2013) ("It is well established that, absent extraordinary circumstances not present here (see generally Tutrani[], 10 N.Y.3d [at] 907-908 []), injuries resulting from a rear-end collision are not proximately caused by any negligence on the part of the operator of a preceding vehicle when the rear-ended vehicle had successfully and completely stopped behind such vehicle prior to the collision[.]"); Corrigan v. Porter Cab Corp., 101 A.D.3d 471, 471 (1st Dept. 2012) (granting front defendants' motion for summary judgment of claims and cross-claims where plaintiff and co-defendants had failed to rebut prima facie negligence case; held that co-defendant's "testimony that [front defendants'] vehicle stopped suddenly is insufficient to raise a triable issue of fact"); Profita v. Diaz, 100 A.D.3d 481, 481-82 (1st Dept. 2012) (granting summary judgment for defendants, who had been rear-ended by plaintiffs, where plaintiffs had failed to rebut the prima facie case of negligence); Dattilo, 79 A.D.3d at 433 (granting summary judgment where "Plaintiff failed to rebut the presumption applicable in rear-end collisions" (citing Tutrani, 10 N.Y.3d 906)).

## 2. Defendant Yapi's Alleged Short Stop

Even if the MCI Defendants were not entitled to summary judgment based on the

prima facie evidence that Mollah acted negligently in hitting Yapi's stopped vehicle, the

undisputed evidence surrounding Mollah's collision with Yapi's cab demonstrates that the MCI

Defendants's are entitled to summary judgment on Plaintiff's claims.

As the driver of a vehicle, Yapi had a duty under New York law "to see what

should be seen and to exercise reasonable care under the circumstances to avoid an accident."

DeAngelis v. Kirschner, 171 A.D.2d 593, 595 (1st Dept. 1991). Plaintiff argues that several

disputed factual issues are "material" to the question of whether he acted negligently, including

(1) whether Yapi stopped short, (2) whether it was negligent for Yapi to stop his vehicle in the

middle of a crosswalk, and (3) whether Yapi in fact stopped at the direction of a "traffic agent." [9]

(Pltf. Br. (Dkt. No. 78) at 8; see also Pltf. Reply 56.1 Stmt. (Dkt. No. 68) at ¶ 15)

---

[9] In accordance with its duty to consider the evidence in the light most favorable to the non-movant, this Court has accepted Mollah's testimony that Yapi stopped short. To the extent that Plaintiff argues that Yapi admitted at his deposition that he stopped short (Stadtmauer Decl. (Dkt. No. 77) ¶ 12; Pltf. Reply 56.1 Statement (Dkt. No. 68) at ¶ 3), however, Plaintiff has mischaracterized the record. Yapi did not testify that he stopped short. The relevant testimony is as follows:

Q: Would you describe [your stop] as a hard brake or a soft brake?

A: A soft brake.

Q: Very soft?

A: Ten seconds.

Q: Slowly?

A: Slowly. As I said, I saw the first lane, the second lane stop, so I stopped and I saw the traffic agent. I saw the traffic agent. If I was stopping short, I wasn't about to look at the left lane or right lane.

20

Where the parties' evidence establishes a factual dispute, this Court must resolve
the dispute in favor of the non-movant. Spinelli, 579 F.3d at 166. Whether a factual dispute is
material – and thus precludes a grant of summary judgment – however, depends on whether its
resolution in favor of one party or another would "'lead[] to a different legal outcome.'" Yi Fu
Chen, 2015 WL 3953532, at *4 (quoting Krynski, 707 F. Supp. 2d at 322). Plaintiff has not
offered any evidence demonstrating a causal relationship between Yapi's alleged short stop and
the collision. Indeed, Mollah himself testified that he collided with Yapi because – when Mollah
pressed on the brake – the brake did not function properly:

Q: Did that car stop short, the one in front of you?

A: Yes.

Q: Did it –

A: Because the car stopped because of this sound of siren and me too.

Q: How do you know that he stopped for the siren? Did you ask the driver?

A: Because all the cars around there stop when they heard the ambulance.

Q: Did you stop also?

A: Yes.

Q: Why did your car hit the car in front of you?

A: I had a green light and I was moving and my car was highbred. I pressed the
brake and it did not work.

Q: Are you saying that the brake didn't function?

A: I think the brake did not work properly.

(Bornes Decl., Ex. C (Yapi Dep.) (Dkt. No. 50-3) at 45:14-25 (emphasis added)).
Viewed in context, it is obvious that Yapi did not testify that he had stopped short. Yapi
testified that he looked in the left and right lanes before stopping, and the excerpt cited by
Plaintiff merely emphasizes that Yapi had not stopped short.

(Bornes Decl., Ex. D (Mollah Dep.) (Dkt. No. 50-4) at 21:3-23; see also MCI Def. R. 56.1 Stmt. (Dkt. No. 49) ¶¶ 13, 15) (emphasis added)  Accordingly, Mollah's testimony indicates that a brake failure in Mollah's car – and not Yapi's short stop – caused Mollah's vehicle to collide with Yapi's cab.  Given this evidence – which is uncontradicted – no reasonable jury could find that the cause of the accident was Yapi's short stop.  See Paulino v. Guzman, 85 A.D.3d 631, 632 (1st Dept. 2011) (granting defendant's motion for summary judgment where the driver of the vehicle in which plaintiff was a passenger "testified that he applied his brakes but could not stop because the road was wet").

While Plaintiff is correct that there can be "'more than one proximate cause of a plaintiff's injuries'" (Pltf. Br. (Dkt. No. 78) at 7-10 (citing Sheehan v. New York, 40 N.Y.2d 496, 505 (1976)), Plaintiff has offered no evidence that Yapi's actions caused the accident. Where courts have denied summary judgment in cases involving a rear-end collision, there has been evidence that a negligent act by someone other than the driver of the rear vehicle was a cause of the injury.  See, e.g., Tate v. Brown, 125 A.D.3d 1397, 1398-99 (4th Dept. 2015) (denying summary judgment where "defendant testified . . . that the vehicle in which plaintiff was a passenger stopped 'suddenly' in the traffic lane in front of him, and that he could not stop in time to avoid a collision"); Chernin v. New York City Metro. Tr. Auth., 52 A.D.3d 763 (2d Dept. 2008) (summary judgment denied where plaintiff's deposition testimony indicated that the "location of the [defendant's] bus . . . blocked [plaintiff's] view of oncoming traffic, including the van that struck him").  Given Mollah's testimony that he could not avoid hitting Yapi's cab because Mollah's brakes failed, no reasonable jury could find that Yapi's stop contributed to the collision.  There is no evidence, for example, that Mollah had insufficient time to react to Yapi's stop, or that the collision occurred because Yapi negligently stopped in a crosswalk.

22

Because Plaintiff has not offered sufficient evidence to create a material issue of

fact as to whether Yapi's actions caused or contributed to the collision, the MCI Defendants are

entitled to summary judgment on Plaintiff's negligence claim against them.[10]

## III.   PLAINTIFF'S MOTION TO AMEND

### A.   Legal Standard

Plaintiff seeks to amend the Complaint to add a cause of action for vicarious

liability against Woodside Management, Inc., which she alleges was responsible for managing

the taxicab owned by Palermo. (See Stadtmauer Aff., Ex. K, Proposed Am. Cmplt. (Dkt. No.

60-11) at ¶¶ 33-43)  "Leave to file an amended complaint 'shall be freely given when justice so

requires,' Fed. R. Civ. P. 15(a), and should not be denied unless there is evidence of undue delay,

bad faith, undue prejudice to the non-movant, or futility." Milanese v. Ruse-Oleum Corp., 244

F.3d 104, 110 (2d Cir. 2001) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  "Amendment

would likely be futile if, for example, the claims the plaintiff sought to add would be barred by

the applicable statute of limitations." Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000)

(citing McGill v. Goff, 17 F.3d 729, 734 (5th Cir. 1994)).

"'In diversity cases, state statutes of limitations govern the timeliness of state law

claims. . . .'" Cannellas ex rel. Estate of DiGiacomo v. Lentz, 396 F. Supp. 2d 435, 438

(S.D.N.Y. 2005) (internal quotation marks omitted) (quoting Diffley v. Allied-Signal, Inc., 921

---

[10] "'A cross-claim, once properly made, does not cease to be proper because the defendant to whom [it] w[as] addressed ceased to be a co-defendant.' . . . [S]ince [the MCI Defendants'] Notice of Motion [] did not seek dismissal of [the Palermo Defendants'] cross-claim[], [the MCI Defendants do] 'not get that relief.'" Benjamin v. Fosdick Mach. Tool Co., No. 11-CV-571, 2013 WL 3784139, at *2 n.2 (W.D.N.Y. July 18, 2013) (quoting Shaps v. D.F.D.S., No. 83 CIV. 8091(CBM), 1985 WL 269, at *3 (S.D.N.Y. 1985), recon. granted on other grounds, No. 83 Civ. 8091 (CBM), 1986 WL 4074 (S.D.N.Y. 1986); Berns v. EMI Music Publishing, Inc., No. 95 Civ. 8130(KTD), 1999 WL 1029711, at *10 (S.D.N.Y. 1999)); see Notice of Mtn. (Dkt. No. 48) at 1 (requesting "an Order granting summary judgment and dismissing the Complaint as against said defendants").

23

F.2d 421, 423 (2d Cir. 1990)).  Under New York law, "an action to recover damages for a personal injury" "must be commenced within three years."  N.Y. C.P.L.R. § 214(5).  Here, the accident at issue occurred on December 3, 2011.  (Pltf. 56.1 Resp. (Dkt. No. 80) at ¶ 1)  Plaintiff did not seek leave to amend the Complaint until June 4, 2015, however, well after the applicable statute of limitations had expired.  (Dkt. No. 41)

"'If a complaint is amended to include an additional defendant after the statute of limitations has run, [however,] the amended complaint is not time barred if it "relates back" to a timely filed complaint.'"  Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 289 F.R.D. 401, 405 (S.D.N.Y. 2013) (quoting VKK Corp. v. Nat'l Football League, 244 F.3d 114, 128 (2d Cir. 2001)).  Rule 15(c) "mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion."  Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 553 (2010).

An amended complaint may "relate back" to a timely-filed complaint where (1) "the relevant New York State statute of limitations provisions allow for it"; or (2) the elements described in Federal Rule of Civil Procedure 15(c)(1)(C) are met.  Naughright v. Robbins, No. 10 Civ. 8451, 2014 WL 5315007, at *3 (S.D.N.Y. Oct. 17, 2014) (citing Fed. R. Civ. P. 15(c)(1)(A)).  In determining whether an amended complaint relates back in any given case, Federal courts are to apply whichever standard is "more forgiving."  Fed. R. Civ. Pro. 15(c)(1) advisory committee's note to 1991 amendment.

Under New York law,

"[w]here the claim against the new party would otherwise be barred by the applicable statute of limitations, the claim may nonetheless be asserted upon demonstrating that:  (1) both claims arose out of the same conduct, transaction, or occurrence, (2) the new party is united in interest with the original defendant[s], and by reason of that relationship can be charged with such notice of the institution of the action that the new party will not be prejudiced in maintaining its

defense on the merits by the delayed, otherwise stale, commencement, and (3) the new party knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been brought against that party as well."

Naughright, 2014 WL 5315007, at *3 (quoting Pansini Stone Setting, Inc. v. Crow & Sutton

Assocs., Inc., 46 A.D.3d 784, 786 (2d Dept. 2007)).

Under Fed. R. Civ. P. 15, relation back is appropriate where

(1) the amendment asserts a claim arising from the "conduct, transaction or occurrence" in the original pleading; and (2) within ["the period provided by Rule 4(m) for serving the summons and complaint,"] the party to be added (i) "received such notice of the action that [that party] will not be prejudiced in defending on the merits" and (ii) "knew or should have known that the action would have been brought against [that party], but for a mistake concerning the proper party's identity."

Abdell v. City of New York, 759 F. Supp. 2d 450, 454 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P.

15(c)(1)(B), (C)).

The New York and federal elements of the relation back doctrine differ only with

regard to the second element. See Sloane v. Town of Greenburgh, No. 01 Civ. 11551(MBM),

2005 WL 1837441, at *3 (S.D.N.Y. July 27, 2005); Bass v. World Wrestling Fed'n Entm't, 129

F. Supp. 2d 491, 508 n.13 (E.D.N.Y. 2001). "Although the New York and federal rules are

similar, . . . courts in this district have applied the 'unity of interest' requirement in the second

prong of the New York rule because it is arguably more lenient than the parallel federal

provision." Sloane, 2005 WL 1837441, at *3 (citing Buran v. Coupal, 87 N.Y.2d 173, 179

(1995); Blakeslee v. Royal Ins. Co. of Am., No. 93 CIV. 1633(MBM), 1998 WL 209623, at *3

(S.D.N.Y. Apr. 29, 1998)).[11]

---

[11] In a March 15, 2016 submission, the Palermo Defendants argue for the first time that amendment would be futile because the Graves Amendment, 49 U.S.C. § 30106, protects leasing companies such as Woodside from liability. (Mar. 15, 2016 Palermo Def. Br. (Dkt. No. 86) at 4) This Court will not consider this argument because it is untimely. Briefing on Plaintiff's motion

## B.    Analysis

### 1.    Same Conduct

Plaintiff's proposed claim against Woodside is for vicarious liability as Defendant Mollah's alleged employer. (See Pltf. Br. (Dkt. No. 61) at 7-8)  Accordingly, the proposed claim against Woodside would arise out of Mollah's alleged negligence in connection with the December 3, 2011 collision – the same conduct that forms the basis for Plaintiff's negligence claim against Mollah and Palermo.  Plaintiff's proposed new claim against Woodside thus arises out of the same conduct or occurrence described in the Complaint.

### 2.    Unity of Interest

"Unity of interest is a question of law to be determined from an examination of the nature of the plaintiff's claim and the 'jural relationship' existing between the parties."  Hunter v. Deutsche Lufthansa AG, No. 09 CV 3166(RJD)(JMA), 2013 WL 752193, at *5 (E.D.N.Y. Feb. 27, 2013) (citing Connell v. Hayden, 83 A.D.2d 30, 42 (2d Dept. 1981)).  "The classic example [of unity of interest] is vicarious liability between employer and employee or a corporation and its agent."  Id.

The Palermo Defendants argue that there is no unity of interest because Mollah and Woodside do not have an employment relationship.[12]  (See Palermo Def. Br. (Dkt. No. 65) at 13).  "Control of the method and means by which the work is to be performed is a critical factor in determining whether a party is an independent contractor or an employee for the purposes of

to amend closed on August 31, 2015.  (Dkt. No. 46)  To the extent that Plaintiff – without leave – made a new application regarding her motion to amend in her March 4, 2016 submission, she requested only that the Court permit her to supplement the record to include material from Palermo's bankruptcy proceedings.  (See Dkt. No. 82)  The issue of whether amendment was futile was not reopened.

[12]  The MCI Defendants argue that there is no employment relationship between Woodside and Mollah because the lessor-lessee relationship is "common" in the New York taxi industry.  (MCI Def. Br. (Dkt. No. 63) at 4)  This is irrelevant to the question of whether Woodside exerted the requisite control over Mollah's actions.

26

tort liability." Lopez v. Allied Amusement Shows, Inc., 83 A.D.3d 519, 520 (1st Dept. 2011) (citing Goodwin v. Comcast Corp., 42 A.D.3d 322, 322-323 (1st Dept. 2007)). "The mere retention of general supervisory powers over an independent contractor cannot form a basis for the imposition of liability against the principal." Id. (citing Goodwin, 42 A.D.3d at 322-23).

To find that parties are united in interest, it is sufficient to find that "there is a jural or legal relationship giving rise to potential vicarious liability." LeBlanc v. Skinner, 103 A.D.3d 202, 210 (2d Dept. 2012) The "general rule" under New York law is that "'[w]hether a person is an "employee" or an "independent contractor" is an ultimate fact to be determined from the evidence itself.'" Bermudez v. Ruiz, 185 A.D.2d 212, 213 (1st Dept. 1992) (quoting Felice v. St. Agnes Hosp., 65 A.D.2d 388, 396 (2d Dept. 1978)); see also Williams v. Boulevard Lines, Inc., No. 10 Civ. 2924(DF), 2013 WL 1180389, at *13 (S.D.N.Y. Mar. 12, 2013) ("The question of whether an individual was working as an employee or an independent contractor should generally be left to the jury." (citing Carrion v. Orbit Messenger, 82 N.Y.2d 742, 744 (1993) ("It is well settled that whether an operator of a delivery vehicle is an agent, potentially rendering the principal liable under the doctrine of respondeat superior, or is an independent contractor, is a question for the trier of fact."))). "'[W]here the proof on the issue of control presents no conflict in evidence,'" however, a court may determine whether an individual is an independent contractor as a matter of law. Williams, 2013 WL 1180389, at *6 (quoting Lazo v. Mak's Trading Co., Inc. 199 A.D.2d 165, 166 (1st Dept. 1993)).

Defendants have not offered evidence that conclusively establishes that Mollah was an independent contractor of Woodside. Woodside is a management company that leases taxi medallions (and the vehicles to which they are attached) to drivers, including Mollah. (Stadtmauer Aff., Ex. E, Ljesnjanin Dep. (Dkt. No. 60-5) at 9:11-10:5; Stadtmauer Aff., Ex. D,

27

Mollah Dep. (Dkt. No. 60-4) at 7:11-13) Mollah, along with two other drivers, paid Woodside $1,400 per week to lease the vehicle; Mollah's share of the lease, which he paid in cash to Woodside, was $120 per day. (Id. at 10:3-11:19)

        Mollah's testimony indicates that Woodside exercised some control over him in addition to leasing the vehicle and medallion. One of Mollah's three "supervisors" introduced him to the two other drivers of his vehicle at Woodside's office. (Id. at 12:9-13:3) The three men drove the taxicab in shifts. Mollah's shift – 5:00 a.m. to 5:00 p.m., Friday through Sunday – was set by a supervisor. (Id. at 8:21-9:2, 10:24-11:8) When the amount that the three men owed under the lease changed – as happened – a Woodside supervisor would inform him of the change. (Id. at 14:2-8) After the collision with Yapi, Mollah went to Woodside's office to complete an accident report, which was kept on file at Woodside's office. (Id. at 38:4-42:9; Stadtmauer Aff., Ex. E, Ljesnjanin Dep. (Dkt. No. 60-5) at 13:7-12; 14:6-16)

        Woodside also managed the GPS system on the computer in Mollah's vehicle, which contained a record of all of the trips that Mollah took during his shift and the fares he charged. (Stadtmauer Aff., Ex. D, Mollah Dep. (Dkt. No. 60-4) at 17:2-18) Woodside also owns the garage where all maintenance of and repairs on the vehicle were conducted. (Id. at 9:11-10:1) The Woodside garage provides tire, oil, repairs, windshield wipers, necessary parts, and inspections for the cars associated with its medallions at that garage. (Stadtmauer Aff., Ex. E, Ljesnjanin Dep. (Dkt. No. 60-5) at 10:6-11:20) Woodside also provides a standby vehicle to drivers if their car breaks down. (Id. at 12:2-8)

        This evidence is sufficient to raise an issue of fact as to whether Woodside's control of Mollah amounts to an employment relationship. See, e.g., Williams, 2013 WL 1180389, at *7, 9 (finding a triable issue of fact on the issue of whether a bus driver was an

28

independent contractor or an employee based in part on deposition testimony that he was assigned to a pre-established bus route, was required to record his inspection of a bus before he could leave each day, and was required to undergo a medical exam and drug and alcohol tests every two years); Ahmad v. Yellow Cab Co. of New London and Groton, Inc., 49 F. Supp. 3d 178, 184-86 (D. Conn. 2014) (finding that a taxicab lessor was not an employer of plaintiff-lessees as a matter of federal law where, inter alia, the lessor "did not control the number of hours the plaintiffs chose to work or the scheduling of those hours"; "the plaintiffs were not required to report traffic violations"; and "the plaintiffs were not required to report their fares"). Given that a reasonable jury could find Woodside vicariously liable for Mollah's negligence, the unity of interest requirement is met.

### 3. Mistake

"With respect to the mistake element, 'where a plaintiff can show that he misapprehended the identity of the person he wished to sue (a factual mistake), or failed to understand the legal requirements of his claim (a legal mistake), then the claim satisfies the "mistake" requirement' of Rule 15(c)." Maccharulo v. Gould, 643 F. Supp. 2d 587, 595 (S.D.N.Y. 2009) (quoting Dupree v. Pough, 454 F. Supp. 2d 166, 174 (S.D.N.Y. 2006)). As the Supreme Court has noted, "repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." Krupski, 560 U.S. at 550 (2010). However, a plaintiff who "'has sued [what he believes is] the right defendant, and simply neglect[s] to sue another defendant who might also be liable'" may not avail herself of the relation back doctrine. Hahn v. Office & Prof'l Employees Int'l Union, AFL-CIO, 107 F. Supp. 3d 379, 385 (S.D.N.Y. 2015) (quoting In re Vitamin C Antitrust Litig., 995 F. Supp. 2d

125, 129 (E.D.N.Y. 2014)). """[A]n amended complaint adding new defendants cannot relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.'" . . . [S]uch amendments do not satisfy the 'mistake' requirement because they seek to 'correct a lack of knowledge, rather than a mistake of fact.'" Sloane, 2005 WL 1837441, at * 4 (quoting Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999); Sidney v. Wilson, No. 03 Civ. 830 (VM), 2005 WL 1500869, *3 (S.D.N.Y. June 24, 2005)).

        Noting that she pleaded a vicarious liability claim against Palermo in the Complaint, Plaintiff argues that Woodside should have known that it was the "real party in interest" in this suit. (Pltf. Reply Br. (Dkt. No. 69) at 7)  However, Plaintiff's claim against Palermo is not based on an employment relationship, but instead on a New York statute that imputes liability to the owner of a vehicle and medallion for injuries to a person resulting from negligence in the use of that vehicle. See New York Veh. & Traf. Law § 388; New York City Admin. Code § 19-530. Plaintiff now wants to add a claim against Woodside as Mollah's employer, based on a new theory of vicarious liability founded on the doctrine of respondeat superior. (See Stadtmauer Aff., Ex. K, Proposed Amended Cmplt. (Dkt. No. 60-11) at ¶ 43) This is not a situation in which Plaintiff "'harbor[ed] a misunderstanding about [Woodside's] status or role in the event giving rise to the claim at issue, and . . . mistakenly cho[]se[] to sue a different defendant based on that misimpression.'" Bayerische Landesbank, 289 F.R.D. at 406 (quoting Krupski., 560 U.S. at 549). Indeed, in the Complaint, Plaintiff did not sue Palermo or any other defendant on a theory that they were liable as Mollah's employer. Accordingly, Plaintiff's failure to sue Woodside was not the result of a mistake, and therefore her proposed amended complaint does not relate back to the original complaint.

It matters not whether Plaintiff was aware that Mollah had an employer when she filed the Complaint. [13] "'[L]ack of knowledge' of facts giving rise to an independent theory of liability against" a proposed defendant does not satisfy the mistake element of the New York relation back doctrine. Hunter, 2013 WL 752193, at *7. "Permitting this type of discovery to qualify as a 'mistake' is tantamount to extending the limitations period for the untimely discovery of liability[,]" which this Court will not do. Id.[14]

Because any claim against Woodside would be barred by the statute of limitations, Plaintiff's motion to amend the Complaint to add Woodside as a defendant will be denied as futile.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for an order staying this action only as to Palermo is denied. This case is stayed as to all claims against Defendants Palermo and Mollah pursuant to 11 U.S.C. § 362. Defendants MCI and Yapi's motion for summary

---

[13] Plaintiff states that Palermo's recent bankruptcy proceedings reveal that Palermo does not even have a bank account, while Woodside – along with other management companies – handled the "'hundred[s] of millions of dollars'" associated with the lease of medallions and vehicles. (Pltf. Reply Br. (Dkt. No. 69) at 7 n.1) Palermo's lack of assets does not affect the analysis of the "mistake" element, however.

[14] In their March 15, 2016 submission, the Palermo Defendants argue that Plaintiff should be sanctioned for her "frivolous" motion to amend. (Mar. 15, 2016 Palermo Def. Br. (Dkt. No. 86) at 6-7) Defendants have not complied with Federal Rule of Civil Procedure 11(c)(2), however, which provides that "[a] motion for sanctions must be made separately from any other motion[.]" Moreover, they have not provided any indication that they complied with the safe-harbor provision in Rule 11(c)(2), which requires a party seeking sanctions to serve a motion for sanctions 21 days before filing it to give the opposing party an opportunity to withdraw or correct the challenged submission. "The safe-harbor provision is a strict procedural requirement," Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 175 (2d Cir. 2012), and Defendants' non-compliance is a sufficient basis for rejecting their request for sanctions. In any event, the Palermo Defendants have not demonstrated that Plaintiff's legal arguments are so clearly without merit as to meet the high standard for imposing sanctions. See Fishoff v. Coty Inc., 634 F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." (citing Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002)).

judgment is granted as to Plaintiff's claims against them.  Plaintiff's request to supplement her motion to amend papers is granted, but her motion to amend the Complaint is denied.  The Clerk of the Court will terminate the motions (Dkt. Nos. 48, 59, 71, and 82).

Dated: New York, New York
       March 30, 2016

                                   SO ORDERED.

                                   Paul G. Gardephe
                                   United States District Judge

32